MUELLER *v.* CITIZENS TELEPHONE CO.

1. APPEAL AND ERROR—DIRECTED VERDICT.
   A verdict for defendants, on submission of the case to the jury, does not operate to deprive them of the benefit of a motion for a directed verdict, decision on which was reserved, and they may now insist thereon in answer to all of plaintiffs' claims of error.[1]

2. ELECTRICITY—DUTY TO INSPECT WIRING—FIRES.
   A telegraph company, which installed a time clock in plaintiffs' factory and erected the circuit wire thereto upon a pole in a position above a high voltage wire, owed plaintiffs the duty of safeguarding its wire by reasonable inspection and supervision, which was not met by a showing of suitable installation more than two months before a fire occurred claimed to have been caused by a defect in said wiring.[2]

3. SAME—TRIAL—INSTRUCTIONS—VANDALISM.
   The trial court was in error in instructing the jury that the duty to inspect the wiring is not inclusive of vandalism or wilful interference by human agency.[3]

4. APPEAL AND ERROR—DUTY TO INSPECT—HARMLESS ERROR.
   Error in instructing the jury that defendant is not required to inspect its wiring as against vandalism or wilful interference is not reversible, where plaintiffs failed to make a case.[4]

5. ELECTRICITY—NOTICE—DUTY TO INSPECT—FIRES.
   Where plaintiffs, after the wire was installed, erected an addition to their building and placed tin flashing close to said wire, defendant is not chargeable with notice thereof and was not in duty bound to run inspection over the wire to discover whether plaintiffs had created a possible grounding connection quite likely to create an arc and set fire to the building if its grounding system was cut off from performing service.[5]

---

[1]Appeal and Error, 4 C. J. § 2872; [2]Electricity, 20 C. J. § 45; [3]Id., 20 C. J. § 69; [4]Appeal and Error, 4 C. J. § 3026; [5]Electricity, 20 C. J. § 45.

6. SAME—INSPECTION—FIRES—PROXIMATE CAUSE.

> Defendant's failure to reasonably inspect a service wire to plaintiffs' electric clock, installed by it, would not render it liable for the damage to plaintiffs' building caused by fire from a short circuit, where it had provided against such contingency by a grounding system which would have been effective had not plaintiffs' watchman mistakenly torn the wires out of the clock and thereby destroyed the grounding system.[6]

7. SAME—INFERENCES.

> Although there was no evidence to show that there was no fire before the grounding system was destroyed, it will not be inferred that there was any, use of the reasoning faculties leading to a conclusion against said inference, under the circumstances.[7]

8. SAME—FIRES—LIABILITY.

> Where defendant's grounding system was destroyed by plaintiff's watchman before it had an opportunity of demonstrating its effectiveness, the mere fact that it might not have proved effective when put to the test will not render defendant liable.[8]

9. PLEADING—REAL PARTY IN INTEREST—INSURANCE.

> If, in an action by the owners of a building for damages thereto caused by a fire, they were acting for the benefit of certain insurance companies to whom they had assigned their claims, there was no error in questioning them as to their interest in the case and in bringing the true parties to the record, in view of 3 Comp. Laws 1915, § 12353, requiring every action to be prosecuted in the name of the real party in interest.[9]

10. SAME.

> It is not error to ask about a subject which good pleading demands should be set forth in the declaration.[10]

Error to Kent; Brown (William B.), J.    Submitted October 15, 1924.    (Docket No. 99.)    Decided April 3, 1925.

Case by Frederick H. Mueller and another, copartners as the Mueller Furniture Company, against the

[6]Electricity, 20 C. J. § 48; [7]Evidence, 23 C. J. § 1797; [8]Electricity, 20 C. J. § 66; [9]Pleading, 31 Cyc. p. 680; [10]Id., 31 Cyc. p. 682.

Citizens Telephone Company and the Western Union
Telegraph Company for the alleged negligent burning
of plaintiffs' building.    Judgment for defendants.
Plaintiffs bring error.    Affirmed

*Laurence W. Smith* and *Charles G. Turner,* for appellants.

*Colin P. Campbell,* for appellee telephone company.

*Rodgers & Rodgers* (*Francis R. Stark* and *Joseph L. Egan,* of counsel), for appellee telegraph company.

WIEST, J.    A circuit wire, operating an electric
time clock in plaintiffs' factory, became charged with
voltage from contact with a city lighting wire, and
being near tin flashing, where it entered the factory
building, formed a short circuit, jumped to and melted
the tin and set fire to the building, about 1:30 o'clock
the morning of December 31, 1922.    The circuit
wire belonged to the defendant telegraph company and,
under facility license, was supported along a street
by brackets upon poles of the defendant telephone
company.    This suit was brought to recover the fire
loss and damage by water, under the claim that the
telephone company workmen removed the circuit wire
from its bracket fastening on one of the poles and so
let it sag to the city lighting wire, and the telegraph
company neglected reasonable inspection, which, if
it had been made, would have disclosed the condition
of the wire in time to have remedied the same and
have prevented the fire.    Trial by jury resulted in a
verdict for defendants and plaintiffs review by writ
of error.    At the close of the proofs defendants moved
for a directed verdict and decision thereon was reserved.    Verdict for defendants, upon submission of
the case to the jury, has not operated to deprive defendants of the benefit of such motions and they may

now insist thereon in answer to all of plaintiffs' claims of error.

The time clock was installed by the telegraph company in the factory engine room with the circuit wire entering through a side of the building.   After such installation plaintiffs built an addition to that side of the building, and where the roof of the addition joined the old frame building placed tin flashing close to the clock wire.   There is where the fire started.   After this addition was put· up the telegraph company, at the request of plaintiffs, moved the clock to another part of the engine room but did not disturb the circuit wire where it entered the building or make any inspection of the wire outside of the engine room. Plaintiffs' nightwatchman discovered the clock making a buzzing sound and saw smoke issuing from it, jerked the circuit wire from the clock and soon found the building on fire.   The clock had a set of magnets formed of two coils of fine wire.   This clock was one of ten on the circuit.   The coils were burned out in eight clocks, located in other buildings, without causing any fire.   The buzzing heard by the watchman was evidently caused by the powerful electric current in the coils.   This current would result in overheating and the burning out of the coils but would not destroy connection with the ' grounding system provided to take care of possible heavy voltage.   When the wire was jerked from the clock the electric current could not find the ground through the system provided by the telegraph company and, following the bent of electricity, sought its own ground by jumping to the tin flashing, thereby forming an arc.

The telegraph company made a daily test of the circuit wire to find whether it was taking on or leaking electric current and the morning before the fire found the wire in service order.   If high voltage was then on the circuit wire the test so made would have

disclosed its presence.    The city electric light wire, however, carried no current in the day time.    It is evident the contact between the circuit and the city electric lighting wires happened for the first time the very night of the fire, for, had it happened before the magnets in the clock would have been destroyed.    The telegraph company claims proper installation, supervision and inspection of the circuit wire, and attributes the fire to the short circuit created when the watchman jerked the wire from the clock and disrupted the grounding system and occasioned an arc where plaintiffs had carelessly placed the tin flashing near the wire.

The telephone company denies interference with the circuit wire, its linemen support this claim and no evidence appears to the contrary.    It does appear that the telephone linemen were up the pole in question, on November 13, 1922, to care for some telephone wires and, finding the telegraph company bracket not in use and without a glass insulator, procured an insulator, placed it on the bracket and fastened a telephone wire thereto.    Where the circuit wire was at that time does not appear, neither was it shown how it and the insulator became removed from the bracket. There is no direct evidence that the circuit wire at this pole was sagging when the telephone workmen were there.

Having installed the circuit wire upon a pole in a position above the city high voltage wire, the telegraph company owed plaintiffs, its patrons, the duty of safeguarding by reasonable inspection and supervision its wire from contact with the high voltage wire, and this duty was not met by a showing of suitable installation alone, on October 16th, before the fire.    We cannot approve of the instruction that inspection against vandalism or wilful interference is not required.

Reasonable supervision to maintain the integrity of the wire was required. The purpose of inspection is to discover need of repair and by repair prevent injury to persons and damage to property, and the duty is inclusive of wanton interference by human agency as well as wear and interference by the elements. This error in the instruction, however, does not call for a new trial, but only sends us back to the question of whether plaintiffs made a case. The telegraph company was not chargeable with notice of the fact that plaintiffs, in building the addition, had placed tin flashing close to the circuit wire, for it was not in duty bound to run inspection over the wire to discover whether plaintiffs had created a possible grounding connection quite likely to create an arc and set fire to the building if its grounding system was cut off from performing service.

It is manifest from this record that plaintiffs' watchman in jerking the circuit wire from the clock disrupted the grounding system, caused the electric current to form an arc in jumping to the tin flashing and occasioned the fire. It is no answer to this to say that, if the watchman acted as best he knew how, or as a reasonably prudent person might be expected to act under the same circumstances, the blame for the fire rests upon the telegraph company. This is not an instance of a person placed in sudden peril, but of a mistake made by the watchman in his ignorance of what was likely to happen if he let the wire alone. If the telegraph company was negligent in the matter of inspection, the act of the watchman intervened and turned what may have been a harmless situation into one of active destruction. We discover no good reason for visiting the consequences of the watchman's mistake upon the telegraph company.

But it is said the evidence does not show there was

no fire where the arc formed before the watchman jerked the wire from the clock.    Concede this, and we come to the fact that the fire was discovered there very soon after the wire was jerked from the clock, and elementary use of the reasoning faculties, from what in fact happened, to what made it happen, turns one away from the speculative inference intimated.

It is said that the grounding system provided by the telegraph company might not have cared for the high voltage.    Again, it might; but whether it would have done so or not was well worth a try, and the telegraph company may not be deprived of its safeguard to that end and be held liable on the mere theory that its grounding system was not any good anyway.    It seems to have served its purpose elsewhere.

Plaintiffs insist there was reversible error in questioning them about their interest in the case.    Several insurance companies, carrying risks on plaintiffs' factory building, made proportionate contributions and paid the loss sued for, and each took an assignment to the extent of money so paid, and this suit was brought for their use and benefit.    Considering the result of the trial we are not much concerned with the question of whether this suit as planted falls within the inhibition of 3 Comp. Laws 1915, § 12353, requiring every action to be prosecuted in the name of the real party in interest.    If plaintiffs could prosecute the suit for the benefit of the insurance companies, there was no error in bringing the true parties to the record.    Good pleading would have mentioned the insurance companies.    It is not error to ask about a subject which good pleading demands should be set forth in a declaration.    Plaintiffs admitted they had no interest in the result of the suit and defendants had an undoubted right to find out who had an interest.

Plaintiffs' case against the telephone company rested upon a charge of interference with the circuit wire.

All the direct evidence negatived the charge made and must control over mere conjecture.

The circuit judge should have directed the very verdict the jury rendered.

Judgment affirmed, with costs to defendants.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.