# STATE OF MICHIGAN

# COURT OF APPEALS

JANET THURMAN,

        Plaintiff-Appellant,

v

JAMIE SCOTT CLEAVELAND, and PIES, INC.,
doing business as DOMINO'S PIZZA,

        Defendants-Appellees.

UNPUBLISHED
December 26, 2017

No. 334821
Washtenaw Circuit Court
LC No. 15-000990-NI

Before: MURPHY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

In this negligence action, plaintiff, Janet Thurman, appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendants, Jamie Cleaveland, and Pies, Inc. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On January 15, 2014, Thurman left her job at Brookdale Senior Living and attempted to cross Ann Arbor-Saline Road (Saline Road). Saline Road is a busy street with two lanes for northbound traffic, two lanes for southbound traffic, and a center turn lane. The area where Thurman attempted to cross did not have a crosswalk, nor was it a well-lit area. Witnesses described the area as "dark," and it is undisputed that the nearest street lights were over 300 feet away and did not illuminate the area of the road that Thurman was crossing.

Thurman testified that she attempted to cross the road in order to reach the bus stop located on the opposite side. She chose not to walk to a traffic-light controlled cross walk (located about 280 feet from where she crossed) because she wanted to save time. Thurman testified that she had been crossing the road in the same area for about four years.[1] On January

---

[1] A police officer testified that when he spoke to Thurman at the hospital, she stated that she had several near misses with vehicles while crossing Saline Road; however, Thurman testified that she never spoke with a police officer at the hospital and that she had never had any near misses while crossing Saline Road.

15, 2014, she safely crossed the southbound lanes and stopped in the turning lane in order to wait for the northbound traffic to subside. She was wearing dark, non-reflective clothing, and Cleaveland testified that Thurman was faced away from southbound traffic.

Around the same time, Cleaveland, a pizza delivery driver for Pies, Inc, was traveling southbound on Saline Road. He explained that he was returning from a pizza delivery. He testified that he was traveling about 35 miles per hour—10 miles below what appeared to be the posted speed limit[2]—when he merged into the turn lane.[3] Cleaveland stated that as he entered the turn lane, he was applying his brakes. He testified that he saw a dark shape or silhouette around the middle of the turn lane and immediately applied his brakes and attempted to swerve to the right to miss whatever was in the road. He was unable to do so and struck Thurman with his vehicle.[4]

The impact caused Thurman to hit the windshield of Cleaveland's vehicle and then roll off the hood.[5] Based on her testimony, she woke up in the hospital about seven days later. She stated that she stayed in the hospital for about 22 days, and that she sustained injuries to her back, neck, and both legs. She testified that she is in pain every day.

On September 29, 2015, Thurman brought a negligence suit against Cleaveland, asserting that he was negligent in the operation of his vehicle and that his negligence caused her injuries. On January 7, 2016, she added Pies, Inc to the case by filing an amended complaint. She contended that Pies, Inc was responsible for Cleaveland's negligence under a respondeat superior theory. She also asserted that Pies, Inc was negligent in its supervision and training of Cleaveland. On July 26, 2016, Pies, Inc moved for summary disposition under MCR 2.116(C)(10), asserting that it was entitled to summary disposition as a matter of law because Thurman was 100% at fault for the accident. Alternatively, Pies, Inc argued that at the very least the record established that Thurman was more than 50% at fault for the accident, so under comparative-negligence principles summary disposition was appropriate even if Cleaveland was

---

[2] A 45-mile-per-hour speed limit sign was visible from the spot where the accident occurred, and the majority of the witnesses testified that the speed limit where the accident occurred was 45 miles per hour. However, one police officer testified that he contacted the city's engineering department and was informed that the speed limit was actually 35 miles per hour.

[3] In her brief on appeal, Thurman contends that Cleaveland "swerved" into the turn lane. In his deposition, however, Cleaveland denied swerving into the lane, and Thurman has directed us to no evidence contradicting his denial.

[4] The police located a skid mark at the accident scene, and performed a drag test to determine Cleaveland's speed on impact. Based on the calculations, the police determined that Cleaveland was travelling around 10 to 16 miles per hour at the time of impact. Thurman's expert, however, discounted the results of the drag test; he opined that based on how Thurman struck the windshield after impact Cleaveland was travelling about 35 miles per hour when he struck her.

[5] In her brief on appeal, Thurman asserts that Cleaveland "ran over" her. There is, however, no evidence in the record to support that assertion.

a little bit negligent.  Cleaveland joined in the motion.  In response, Thurman submitted a report from Frederick Greive, a traffic crash reconstructionist, who opined that the accident could have been avoided if Cleaveland had entered the turn lane closer to the spot where he was going to turn or if Cleaveland's brakes were fully functioning and he had been paying attention.  In its reply brief, Pies, Inc submitted Grieve's deposition in order to show that his opinion was based on conjecture and speculation, so it was insufficient to create a genuine issue of material fact to avoid summary disposition.  The trial court agreed and granted summary disposition in favor of Cleaveland and Pies, Inc.

## II. SUMMARY DISPOSITION

### A.  STANDARD OF REVIEW

Thurman argues that the trial court erred by granting summary disposition.  We review de novo a trial court's decision to grant summary disposition.  *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).  Cleaveland and Pies, Inc moved for summary disposition under MCR 2.116(C)(1).  "Under MCR 2.116(C)(10), a party may be entitled to summary disposition if there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Stenzel v Best Buy Co, Inc*, 318 Mich App 411, 415; 898 NW2d 236 (2016), vacated in part on other grounds 318 Mich App 801 (2017).  When deciding a motion for summary disposition, the facts must be viewed in the light most favorable to the nonmoving party.  *Id*.  Although courts "may not resolve factual disputes or determine credibility in ruling on a summary disposition motion," *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004), "parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Group of Ins Companies*, 199 Mich App 482, 486; 502 NW2d 742 (1993).

### B.  ANALYSIS

Thurman argues that Cleaveland was negligent when he entered the center left turn lane and hit her with his car.  "To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).  "[I]t is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956).  Further, a driver has a statutory duty to operate a vehicle "at a careful and prudent speed not greater than nor less than is reasonable and proper," and "shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead."  MCL 257.627(1).

Thurman contends that Cleaveland breached his duty of care because a reasonable driver using ordinary care would have seen her standing in the turn lane and would have stopped before hitting her.  Thurman relies on Greive's conclusion that the accident could have been avoided if Cleaveland had been attentive and if his brakes had "been in good working order."  However, in

his deposition Grieve indicated that he felt Cleaveland was inattentive simply because he struck Thurman with his vehicle. Grieve testified, "I don't know how attentive he was at the time." Given that admission, it is clear that his opinion that Cleaveland was inattentive was based wholly on speculation, which is not sufficient to avoid summary disposition. *Libralter Plastics, Inc*, 199 Mich App at 486.

We agree that there was evidence that the brakes on Cleaveland's vehicle had mechanical problems. According to a certified mechanic who examined the vehicle after the accident, the right tires had approximately 10% to 15% of the brake pad remaining, but the brake lines were good. The rear right tire had no outer brake pad, but there was a little left on the inner pad. The rear left tire only had little brake pad left and was almost metal to metal contact. But the brake lines on the rear tires were good. The mechanic also concluded that the brake fluid levels were low. Further, when conducting their drag test, the police adjusted the numbers to reflect that the vehicle had less than 100% braking power. Viewing these facts in the light most favorable to Thurman, it is clear that the brakes had less than full functionality. However, there is no testimony or documentary evidence regarding what effect, if any, the brake problems had on the accident. Grieve testified that without testing Cleaveland's vehicle—which he had not done—he could not say how the problems would affect the vehicle's stopping power. As such, his opinion that if there were no braking problems the accident would have been avoided is based on speculation that the brakes were so deficient that they could not stop the vehicle in enough time.[6]

In opposition to the summary disposition motion, Thurman also relied on Greive's conclusion that

> [a] vehicle traveling at night with its low beam headlights on will illuminate an inanimate, or a non-reflective object, at a distance of approximately 150 feet away. Traveling at a speed of thirty-five (35) miles per hour (51.33 fps.), the operator of a vehicle should be able to perceive, react, and bring the vehicle to a stop in approximately 135 feet.

---

[6] Even viewing the evidence in the light most favorable to Thurman, there is no evidence in the record that Cleaveland was aware or should have been aware that his brakes were functioning at less than 100%. Cleaveland stated that before the accident his brakes were functioning normal. He also reported that before the accident he had not heard any metal-on-metal grinding, which would indicate that his brakes needed to be repaired. Moreover, Grieve testified that based on the record before him he was unable to offer an opinion as to whether Cleaveland ought to have known there was a problem with his brakes before the accident. As such, even if the brakes were functioning at less than 100%, there is nothing in the record to indicate that Cleaveland was aware or should have been aware of the deficiency. Thus, even if the brake-deficiency played some role in the accident, there is no evidence that Cleaveland was negligent in his maintenance of the brakes and should be held liable on the basis that they did not stop his vehicle before it struck Thurman.

Grieve acknowledged at his deposition, however, that he did not inspect Cleaveland's vehicle and could not say whether Cleaveland's headlights would illuminate 150 feet. He also stated that he did not know the angle Cleaveland entered the turning lane and what effect, if any, that would have on his ability to see Thurman with enough time to stop his vehicle. Grieve further admitted that, although he assumed Cleaveland entered the turning lane about 250 to 300 feet before the driveway he intended to turn into, he did not have any factual basis to support that assumption. Accordingly, on this record, it is possible that Cleaveland entered the turn lane 50 feet away from Thurman, illuminated her with his headlights, and simply did not have sufficient time to stop. It is equally possible that he entered the turn lane 150 feet from Thurman, but his headlights did not illuminate her until he was 130 feet away, which gave him insufficient time to stop after seeing her. It is also possible that he entered the turn lane 300 feet away, that his headlights illuminated Thurman when he was 150 feet away, and that he should have been able to stop before striking her with his vehicle. As such, it is clear that although Grieve opined that Cleaveland had enough time to see Thurman and stop his vehicle, he only supported that opinion with a speculative factual basis. That is insufficient to prevent summary disposition. *Id*.

Thurman offered no additional evidence to show that Cleaveland was negligent. Instead, the record reflects that he was traveling at or below the speed limit when he entered the turning lane. He was not on his phone or adjusting his radio. He was braking when he entered the turn lane and, immediately after seeing a dark shape in the road, he applied his brakes harder and attempted unsuccessfully to swerve back into the right lane. It was dark, and Thurman was wearing dark, non-reflective clothing. She was crossing the road in an area without a cross-walk and was, essentially, standing in the middle of a busy road. Under these circumstances, a reasonable and prudent driver would have a hard time seeing Thurman in time to avoid hitting her. The conjecture in Grieve's report is insufficient to establish that Cleaveand failed his duty to exercise ordinary and reasonable care and caution. *Zarzecki*, 347 Mich at 141. As such, the trial court did not err by granting summary disposition in favor of Cleaveland and Pies, Inc.[7]

Affirmed. Cleaveland and Pies, Inc, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[7] On appeal, the parties argue that this is a comparative-negligence case. However, because Cleaveland was not negligent, comparative negligence has no role to play.