*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DWIGHT WALKER, Personal Representative of the
ESTATE OF TERRANCE RAGAN,

        Plaintiff-Appellee,

v

LORENGO WATTS,

        Defendant,

and

CITY OF DETROIT,

        Defendant-Appellant.

UNPUBLISHED
February 21, 2025
10:57 AM

No. 368987
Wayne Circuit Court
LC No. 22-009369-NI

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Defendant, City of Detroit, appeals as of right the trial court's order denying defendant's motion for summary disposition.[1] We affirm.

## I. FACTUAL BACKGROUND

This action arises from a fatal vehicle–pedestrian collision that occurred on August 22, 2020, on Hoover Street in Detroit, Michigan. Early that morning, Watts, driving one of

---

[1] There were initially three parties to this case below: (1) the Estate of Terrance Ragan, by Dwight Walker (plaintiff), (2) defendant, and (3) defendant Lorengo Watts (Watts). Plaintiff admitted that he never served Watts with the complaint in this action and acknowledged that, although the lower court case caption listed Watts as a defendant, Watts was not a party to this case due to the service failure. Plaintiff subsequently filed a separate action against Watts. The only parties participating in this appeal are defendant and plaintiff.

-1-

defendant's city buses, ran over Terrence Ragan (decedent) who was in the street. The parties do not dispute that defendant employed Watts at the time of the accident or that Watts was acting in the scope of his employment at that time.

Katina McCleney, a witness at the scene of the accident, was driving northbound on Hoover Street when she saw decedent sitting in the northbound lane, near the curb, with blood running down his face. McCleney drove a bit further but decided to turn around to help decedent; by the time she turned around, however, decedent was lying down in the road. McCleney pulled over and called the police. At some point thereafter, the bus Watts was driving arrived at the scene and also pulled over. McCleney did not see the bus run over decedent. After Watts arrived, however, McCleney saw a black car drive over decedent's body and continue driving without stopping. Another car stopped in the street and directed traffic around decedent's body using a flashlight.

According to Watts, it was dark outside at the time of the accident—after 5 a.m. but before 6 a.m.—and, although there were streetlights on Hoover Street, the specific area where the accident occurred was dark. Watts admitted to running over decedent with the bus. Watts acknowledged that, while driving northbound on Hoover Street, he saw debris in the road and something in front of the bus that looked to him like a long log lying flat on the road (but was actually decedent). Watts claimed that he did not see decedent's body until it was less than 5 feet in front of the bus. Watts applied the brakes but "it was already too late" and he drove over decedent. Watts then pulled over to the side of the road because it had felt different than hitting a pothole. After pulling over, Watts saw another car hit decedent.

Plaintiff instituted this action by filing a complaint alleging, in relevant part, that Watts negligently operated the bus in the course and scope of his employment with defendant, and his negligent operation directly or proximately caused decedent to sustain a serious impairment of body function resulting in decedent's death. Plaintiff further alleged that defendant was responsible for the damages negligently caused by Watts, pursuant to MCL 257.401—the owner's liability provision of the Michigan Vehicle Code, MCL 257.1 *et seq.*—because defendant owned the bus that Watts drove at the time of the accident; Watts had defendant's "express and/or implied consent and permission" to use the bus at the time of the accident; and Watts negligently operated the bus, causing decedent's death. Defendant subsequently filed a motion for summary disposition, arguing that no genuine issue of material fact existed regarding Watts's alleged negligence. The trial court held a hearing on defendant's motion for summary disposition and ultimately denied the motion, finding that a genuine issue of material fact existed, at a minimum, regarding whether Watts violated the reasonable person's standard of care when he ran over decedent.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred by denying its motion for summary disposition because no genuine issue of material fact existed regarding Watts's alleged negligent operation of the bus. According to defendant, (1) there was no factual support for plaintiff's claim of ordinary negligence, and (2) plaintiff was not entitled to a rebuttable presumption of negligence on the basis of Watts's alleged violation of MCL 257.627(1) because decedent's body in the road constituted a sudden emergency. We disagree.

## A. STANDARD OF REVIEW

This Court "review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion for summary disposition submitted pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim." *Wilmore-Moody v Zakir*, 511 Mich 76, 82; 999 NW2d 1 (2023). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 481; 997 NW2d 307 (2022) (quotation marks and citation omitted). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "The application of governmental immunity is a question of law subject to de novo review." *Yoches v Dearborn*, 320 Mich App 461, 469; 904 NW2d 887 (2017).

## B. ORDINARY NEGLIGENCE

"Under MCL 691.1407(1) of the governmental tort liability act, governmental agencies in this state are generally immune from tort liability for actions taken in furtherance of governmental functions." *West v Dep't of Natural Resources*, 333 Mich App 186, 191; 963 NW2d 602 (2020). But "[t]he Legislature has provided six exceptions to this broad grant of immunity, which courts must narrowly construe." *Id*. (quotation marks and citation omitted). One such statutory exception is the motor vehicle exception created by MCL 691.1405, which provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." In this case, plaintiff claims defendant is liable for damages due to Watts's alleged negligent operation of defendant's bus under the Michigan Vehicle Code's owner's liability provision, MCL 257.401. Pursuant to MCL 257.401(1), "[t]he owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law."

On appeal, defendant first argues there is no factual support for plaintiff's claim of ordinary negligence. The "general standard of care applicable in negligence cases" is ordinary care. *Case v Consumers Power Co*, 463 Mich 1, 6-7; 615 NW2d 17 (2000) (quotation marks omitted).[2] "Ordinary care means the care that a reasonably careful person would use under the

---

[2] Although the *Case* Court referred to "reasonable care" as the general standard of care for negligence cases, it noted that it used "reasonable care" and "ordinary care" interchangeably. *Id*. at 6-7, n 7.

circumstances." *Id*. at 7. "Ordinarily, it is for the jury to determine whether a defendant's conduct fell below the general standard of care." *Id*.

Here, defendant claims that "reasonably and ordinarily prudent drivers were unable to see the body or avoid hitting it," as evidenced by the fact that several other cars hit decedent. The record does in fact contain evidence that other drivers hit decedent. Specifically, the Detroit Police Department's investigatory report indicated that decedent was hit "several times" before Watts hit him with the bus, McCleney testified that she saw a car run over decedent, and Watts testified that he saw another car hit decedent after Watts pulled the bus over. Additionally, the reconstruction report indicated that there were tire marks on decedent's back that did not match the tires on the bus Watts was driving. But the record also contains evidence indicating that at least one other driver was able to avoid hitting decedent. Specifically, McCleney testified that another vehicle stopped and directed traffic around decedent's body.

Defendant also claims that the circumstances surrounding the accident—specifically, the positioning of decedent's body and the lighting conditions in the area—made Watts unable to see decedent until it was too late to avoid hitting him. But the record contains contradictory evidence regarding whether decedent was lying down or sitting up in the street when Watts approached in the bus. Specifically, McCleney testified that she first saw decedent sitting up in the street near the curb but he was lying down once she turned her car around and before Watts hit him. In his affidavit, Watts stated that "decedent was lying down in the street, not sitting up." The traffic crash report indicates that Watts told officers at the scene that decedent was lying down. The case registration summary prepared by an employee of the Wayne County Medical Examiner's office indicates, however, that Watts "could not tell if the decedent was standing or already lying down in the middle of the street when he ran the decedent over."

Similarly, the record contains contradictory evidence regarding the lighting conditions and visibility at the time of the accident. Watts testified that the area where the accident occurred was dark, and that he initially thought decedent was a log in the road. McCleney similarly testified that "it was still so dark out, even with the streetlights you could barely see and [decedent] had on dark clothes . . . ." McCleney believed that a subsequent driver who ran over decedent could not tell what he or she hit and did not know there was a body in the road because "you couldn't really see." McCleney's testimony, however, also indicated that, despite the low lighting, she was able to notice specific details about decedent while driving down the road, such as blood on decedent's face, decedent's skin color, and decedent's hair color—it is unclear whether McCleney's ability to see these details was attributable to the fact that decedent was sitting up at that point rather than lying down. Considering the contradictory evidence in the record regarding at least one other driver's ability to avoid hitting decedent, and the circumstances surrounding the accident, a genuine issue of material fact exists regarding whether Watts exercised ordinary care while driving the bus.

## C. REBUTTABLE PRESUMPTION OF NEGLIGENCE

On appeal, defendant also argues that plaintiff is not entitled to a rebuttable presumption of negligence on the basis of Watts's alleged violation of MCL 257.627(1) because decedent's body in the road constituted a sudden emergency. Pursuant to MCL 257.627(1):

-4-

An individual operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. An individual shall not operate a vehicle on a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead.

"Michigan law provides that when a statute imposes a legal duty, violation of that statute creates a rebuttable presumption of negligence, or stated another way, the violation is only prima facie evidence of negligence." *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 721; 965 NW2d 690 (2020) (quotation marks and citations omitted).

Here, there is a genuine issue of material fact regarding whether Watts breached the duty set forth in MCL 257.627(1) to operate the bus at a "careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time." Watts testified that, at the time of the accident, he was driving the bus 25 or 30 miles per hour. Watts stated that it was uncommon for people to cross Hoover Street at that time of day but also that he knew that a lot of cars sped through the side streets in that area and that he saw people cross streets outside of crosswalks "all the time" while driving the bus. Watts testified that he saw something in the road in front of the bus, though he did not initially realize it was a person. The traffic crash report indicates Watts told officers that he also saw car parts in the middle of the street before the accident. Although Watts testified that he did not see the object (that ultimately turned out to be decedent) in the road until the bus was less than 5 feet away from the object, it is unclear how far in advance Watts saw the car parts in the road. As discussed earlier, Watts's and McCleney's deposition testimony, as well as the traffic crash report, indicated that it was dark outside at the time of the accident. Watts's and McCleney's testimonies further indicated that, although there were streetlights, they did not sufficiently illuminate all areas of the street. Considering the presence of objects in the middle of the street, Watts's knowledge that other cars sped through the side streets in that area and that people regularly crossed streets outside of crosswalks, and the lighting conditions at the time of the accident, there is a question of fact regarding whether Watts was driving the bus "at a careful and prudent speed" and with due regard for the conditions existing at the time of the accident. MCL 257.627(1).

Similarly, there is a genuine issue of material fact regarding whether Watts breached the duty set forth in MCL 257.627(1) by failing to drive the bus at a speed that would permit him to "stop within the assured, clear distance ahead." Watts testified that "it was already too late" to avoid impact by the time he applied the bus's brakes. According to Watts, he was already going over the object when he applied the bus's brakes. Watts further testified that a bus does not stop immediately after the driver applies the brakes, but rather, continues moving a certain distance before stopping. In light of Watts's testimony, it is unclear whether the speed at which he was driving the bus permitted him to "stop within the assured, clear distance ahead" as required by MCL 257.627(1).

A statutory presumption of negligence "may be rebutted by showing the existence of a sudden emergency." *White v Taylor Distrib Co, Inc*, 482 Mich 140; 753 NW2d 591 (2008). "The sudden-emergency doctrine applies when a collision is shown to have occurred as the result of a

sudden emergency not of the defendants' own making." *Id*. at 139-140 (quotation marks and citations omitted). In order for the sudden emergency doctrine to apply, "the circumstances attending the accident must present a situation that is unusual or unsuspected." *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971) (quotation marks and citation omitted). "The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature." *Id*. " 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic." *Id*. To be unsuspected, "it is essential that the potential peril had not been in clearview for any significant length of time, and was totally unexpected." *Id*.

In *Vander Laan*, 385 Mich at 232–233, our Supreme Court found that no emergency existed where

> the accident occurred during daylight hours on a dry, paved highway, thereby precluding the possibility that the surrounding circumstances made the situation "unusual." Just prior to the accident defendant Karsten had been travelling only "two or three car lengths, maybe four" behind the plaintiff, "probably" at a speed of 20–25 m.p.h. Karsten had just turned onto Aberdeen Street, and as indicated by his own testimony, the entire pre-accident setting was in his clear view. This included the hill, the first Miedema truck, which he knew was loaded, and the Vander Laan vehicle.

The *Vander Laan* Court noted that the "whole scene continued to be in actual view at all times except for a 'second or so' when Karsten glanced in his rearview mirror after hitting a bump in the road." *Id*. at 233.

Here, McCleney testified that decedent was already in the street before the bus arrived, and it does not otherwise appear that Watts caused decedent to be in the street. Accordingly, if there was a sudden emergency, it was not of Watts's making. *White*, 482 Mich at 139-140. Although the record indicates that the surrounding area was dark at the time of the accident, the traffic crash report indicated that the weather conditions were clear. The circumstances surrounding the accident therefore were not "unusual." *Vander Laan*, 385 Mich at 232.

It is unclear from the record whether the circumstances in this case were in "clear view for any significant length of time," and, therefore, unsuspected leading up to the accident. *Id*. As discussed earlier, Watts testified that he was driving the bus 25 or 30 miles per hour and that he could not see decedent in the road until decedent was about 5 feet in front of the bus. McCleney similarly testified that "it was still so dark out, even with the streetlights you could barely see and [decedent] had on dark clothes, he was like laid out . . . ." In contrast, McCleney also testified that, despite the low light, she was able to see decedent well enough to tell that he was bleeding and was also able to make out several of decedent's physical characteristics. Watts also testified that he was able to see car parts in the street before the accident. Moreover, during his deposition, Watts denied that the lighting in the area impacted his "ability to drive or operate the bus." Accordingly, viewing the evidence in a light most favorable to plaintiff, the nonmoving party, there is a genuine issue of material fact regarding whether the circumstances in this case were unsuspected, and therefore, whether a sudden emergency occurred.

It is worth noting that defendant relies on our Supreme Court's order in *Briggs v Knapp*, 513 Mich 857; 995 NW2d 356 (2023), to support its contention that the sudden emergency doctrine should apply in the instant case. There, our Supreme Court reversed this Court's decision affirming the trial court's denial of the defendant's motion for summary disposition, and it remanded to the trial court "for entry of an order granting [the defendant's] motion for summary disposition." *Id*. The Supreme Court further concluded that the plaintiff failed to present evidence establishing causation because "there was no showing that the defendant driver could have altered his conduct to avoid the accident." *Id*. The facts in *Briggs* are distinguishable from the present case, however.

As explained in *Briggs v Knapp*, unpublished per curiam opinion of the Court of Appeals, issued March 9, 2023 (Docket No. 358641), p 1, rev'd 513 Mich 857 (2023), two drivers hit a pedestrian while driving on the freeway. The first driver (1) had no warning the crash was going to occur, (2) did not have time to brake or swerve, (3) did not see the pedestrian, and (4) did not think he could have avoided the accident. *Id*. at 7 (KELLY, K. F. dissenting). The second driver similarly "had no time to swerve or apply his brakes" and stated that "something seemed to fall in front of him" on the street. *Id*. An officer testified that the evidence indicated that the drivers did not see the pedestrian before hitting him. *Id*. Here, unlike in *Briggs*, Watts saw car parts and what he believed to be a log (but was actually decedent) in the road, and he applied the bus's brakes. Nonetheless, the bus did not stop in time to avoid running over decedent. Considering the factual differences between *Briggs* and the instant case, defendant's reliance on *Briggs* is unpersuasive.

Affirmed.

/s/ Philip P. Mariani
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney