*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY RYGWELSKI,

       Plaintiff-Appellant,

v

CITY OF FLINT, SAM CLAYTON, and
RAYMOND BARTON,

       Defendants-Appellees.

UNPUBLISHED
December 29, 2020

No. 349743
Genesee Circuit Court
LC No. 18-110413-CZ

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals by right the judgment of no cause of action entered against her after a jury trial. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff worked for the defendant City of Flint (Flint) as a firefighter since 2006. She and defendant Sam Clayton (Clayton), a 21-year veteran of the fire department, worked at the same fire station. The firefighters typically worked 24-hour shifts. On the morning of November 2, 2017, plaintiff was finishing her shift when Clayton arrived early for his shift. The two met in the firehouse kitchen and, according to plaintiff, Clayton approached her from behind, put his hand on the front side of her abdomen, pushed his body against hers, and said, "Good Morning, Amy." Plaintiff also alleged that Clayton smelled like alcohol. Clayton, on the other hand, asserted that he had merely met the plaintiff in the kitchen and exchanged pleasantries; he denied ever touching her or having consumed alcohol that morning.

On November 3, 2017, plaintiff reported the alleged incident to her supervisors, which led to an internal investigation. While the investigation was pending, plaintiff and Clayton were reassigned to different fire stations on the order of defendant Chief Raymond Barton (Barton).

On January 26, 2018, plaintiff filed suit against defendants, asserting claims under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, race[1] and sex-based discrimination and retaliation under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*, ethnic intimidation in violation of MCL 750.147b (part of the Michigan Penal Code), assault and battery (against Clayton), and wrongful termination in violation of public policy. She claimed that after she reported the alleged inappropriate touching, Flint and Barton took adverse employment action against her, including transferring her to a different fire station and disciplining her more severely than other firefighters (namely, male coworkers) after she was found to have violated the department's media policy. Specifically, plaintiff received a 29-day suspension after the department learned that, while on a fire run, she used her cell phone to take a picture of the rising sun while a house burned in the foreground, and posted the picture to social media.

Plaintiff later claimed that Clayton had also retaliated against her by intentionally interfering with her union membership, allegedly with the help of department supervisors, by making baseless claims that she had violated union policies. This claim was based on Clayton having reported to the firefighters' union, in March 2018, that plaintiff was concurrently working for both the Flint Fire Department and the Bishop Airport Fire Department (which Clayton believed violated union conflict-of-interest policies). During these proceedings, plaintiff resigned from her position as a union vice president.

Defendants moved for summary disposition on various grounds, and the trial court granted the motion in part and denied it in part. As a result, the only claims that proceeded to trial were (1) assault and battery against Clayton, (2) retaliation under the ELCRA, and (3) retaliation under the WPA.[2] Further, the court held that the only alleged adverse employment action for which plaintiff could potentially recover any damages was the alleged attempt to oust plaintiff from the union, because the trial court found that plaintiff had signed a release, as part of the union grievance process, for any claims related to her 29-day suspension for violating the department's media policy.

At trial, at the close of her case-in-chief, plaintiff moved for a directed verdict on the issue of Clayton's and Flint's liability for retaliation under the ELCRA, arguing that Clayton had admitted to retaliating against her because he was angry at her for reporting him for sexual harassment. The trial court denied the motion. During jury deliberations, the jury asked a question regarding whether plaintiff's complaint constituted "filing a charge under" the ELCRA if the charge was false. At the trial court's request, both parties submitted a proposed supplemental jury instruction. After reviewing the proposed instructions, the trial court concluded that defendants'

---

[1] Plaintiff is Caucasian. Clayton and Barton are both African-American. Plaintiff alleged, among other things, that defendants made adverse employment decisions based on her race. Specifically, plaintiff alleged that she was told "she could not be in certain areas/events getting media coverage because 'you cannot be the face of the Fire Dept.' "

[2] During trial, the trial court granted a directed verdict in favor of Clayton on the WPA retaliation claim against him. The trial court ruled that there was no individual liability for nonsupervisors under the WPA. Consequently, the jury was only asked to consider the WPA claims insofar as they pertained to Flint and Chief Barton. Plaintiff does not challenge on appeal the trial court's order granting a directed verdict in favor of Clayton on this claim.

proposed instruction accurately stated the law, and it therefore provided that instruction to the jury. Shortly thereafter, the jury returned a verdict of no cause of action on all counts. Regarding plaintiff's WPA claim, when asked if plaintiff engaged in a protected activity, the jury answered, "No." Similarly, with regard to her claim under the ELCRA, when asked if plaintiff opposed a violation of the ELCRA, or filed a charge under the act, the jury answered, "No." Finally, when asked if Clayton willfully and intentionally touched plaintiff against her will, or made threats to do bodily injury to plaintiff, the jury replied, "No."

This appeal followed.

## II. DENIAL OF DIRECTED VERDICT

Plaintiff argues that the trial court erred by denying her motion for a directed verdict against Clayton and Flint (as his employer) regarding her retaliation claim under the ELCRA. We disagree. We review de novo a trial court's decision on a motion for a directed verdict. *Aroma Wines & Equip, Inc v Columbian Dist Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015). We also review de novo issues of statutory interpretation. *Elezovic v Ford Motor Co*, 472 Mich 408, 418; 697 NW2d 851 (2005).

Preliminarily, we note that plaintiff moved for a directed verdict at the end of her case-in-chief, before defendants even had an opportunity to present their evidence. MCR 2.516 governs motions for directed verdicts and provides, in relevant part, "[a] party may move for a directed verdict at the close of evidence offered by an opponent." Plaintiff's motion was therefore premature at the time it was made, and plaintiff never renewed her motion at the close of defendants' proofs. This procedural flaw was sufficient reason for the trial court to deny plaintiff's motion, and it is sufficient reason for us to affirm that decision.

In any event, even if plaintiff had properly moved for a directed verdict at the close of defendants' case, she still would not have been entitled to a directed verdict in her favor. "When evaluating a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in the nonmoving party's favor." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011) (quotation marks and citation omitted). Conflicts in the evidence must be resolved in the nonmoving party's favor to determine whether a question of fact exists. *Cacevic v Simplimatic Engineering Co (On Remand)*, 248 Mich App 670, 679, 645 NW2d 287 (2001). "A directed verdict is appropriately granted only when no factual questions exist on which reasonable jurors could differ." *Id*. at 679-680.

MCL 37.2202(1)(a) provides that an "employer" shall not, among other things, discriminate against an individual because of sex. An "employer" is defined as a person who has one or more employees, and includes an agent of that person. MCL 37.2201(a). Further, discrimination because of sex includes sexual harassment. MCL 37.2103(i). The retaliation provision of the ELCRA provides:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a

complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701.]

To establish a prima face case of retaliation under the ELCRA, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) this was known by the defendant, (3) the defendant took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 161; 934 NW2d 665 (2019).

Plaintiff's theory of the case was that Clayton retaliated against her for reporting him for sexual harassment. In essence, plaintiff argues that Clayton and his counsel conceded all elements of plaintiff's prima facie case of retaliation, stating that Clayton admitted that he "retaliated against [plaintiff] because he was angry with her for reporting him after he intentionally touched her against her will." This, however, does not accurately describe the evidence. Plaintiff's characterization of Clayton's testimony suggests that Clayton admitted that he inappropriately touched plaintiff, and that he filed a complaint with the union because she had made a credible complaint of harassment; however, the record shows that Clayton consistently denied that he touched plaintiff and that he stated that he filed the complaint because he felt that she had lied to their supervisor regarding their encounter, possibly seeking revenge for an earlier incident in which Clayton and plaintiff had argued over an injury that had occurred during a flag football game between the police department and fire department.

In his opening statement, defendants' trial counsel made the following remarks:

The second defense in this case, retaliation. You've got to break it down and you've got to remember which hat I'm wearing. Am I representing Barton or Clayton?

So Clayton's position is going to be you're doggone right I retaliated. I was furious about what she did. She ruined my reputation. She lied about me and that is not protected activity, and I tried to get her kicked out of the union for that. He is going to tell you that.

Later, when addressing Clayton's complaint to the union, defendants' counsel added:

The point is that you are going to hear from officer –from Mr. Clayton who is going to say my motive in filing this complaint was I was angry at what I had been put through. And we are going to talk about that in a second. But I believed in good faith that she had violated the rules and she ought to be held accountable for it and her response to the complaint was she was (inaudible).

Now it is true that Officer Clayton (sic) didn't stop. He pushed it because he wanted her kicked out of the union. You are going to hear that.

\* \* \*

So what is the evidence of lack of retaliation by Mr. Clayton? The evidence is that he was motivated by retaliation to kick Ms. Rygwelski out of the union, but

-4-

that he was doing so because she made up a story about him. Not because she reported him for sexual harassment.

Consistent with representations made in counsel's opening statement, Clayton testified that he filed the union complaint against plaintiff because he was angry that she had made a false claim of harassment against him. He indicated that he wanted to "piss her off," but also that he thought that plaintiff should be removed from the union for violating union rules by working for another fire department.

Considering the record in full, Clayton admitted, at most, that he was angry and that he filed an internal union complaint against plaintiff because she had fabricated a sexual harassment claim. Plaintiff asserts that these admissions were tantamount to Clayton acknowledging that he retaliated against plaintiff because she filed a claim under the ELCRA, i.e., because she engaged in a protected activity. We disagree.

The first hurdle for plaintiff to overcome in establishing a prima facie case of retaliation was to demonstrate that she had engaged in a protected activity. A "protected activity" is defined to include opposition to a violation of, initiating a charge under, filing a complaint under, or participating in a proceeding, investigation or hearing under the ELCRA. MCL 37.2701(a). "Plaintiff cannot prevail on a claim of retaliation in violation of the CRA without establishing that [she] engaged in activity protected under the act." *Barrett v Kirtland Community College*, 245 Mich App 306, 318; 628 NW2d 63 (2001). Further, plaintiff must have, at a minimum, a good-faith belief that she was reporting an unlawful employment practice. *Booker v Brown & Williamson Tobacco Co, Inc*, 879 F2d 1304, 1313 (CA 6 1989) (interpreting the retaliation provisions of the ELCRA).[3]

In this case, plaintiff testified that she was inappropriately touched by Clayton and that she reported this alleged sexual harassment to her superiors and human resources. Clayton, however, denied that he ever touched plaintiff, let alone in the manner she described at trial. "When considering a motion for a directed verdict, it is 'the factfinder's responsibility to determine the credibility and weight of trial testimony.' " *King v Reed*, 278 Mich App 504, 522: 751 NW2d525 (2008). That is, a jury is free to disbelieve and to discredit the testimony offered in support of a plaintiff's case. *Taylor v Mobley*, 279 Mich App 309, 314; 760 NW2d 234 (2008). If the jury were to believe that plaintiff fabricated her claim of sexual harassment, then plaintiff was not engaged in a protected activity. Reporting a fabricated account of harassment would not be an activity protected by the act, because a plaintiff could not possibly be acting upon a good-faith or reasonable belief of unlawful activity. And because a question of fact existed with respect to whether the sexual harassment actually occurred, reasonable jurors could have differed with respect to whether plaintiff engaged in protected activity. Accordingly, the trial court did not err when it denied plaintiff's motion for a directed verdict.

---

[3] Our Supreme Court has observed that "[w]e are many times guided in our interpretation of the Michigan Civil Rights Act by federal court interpretations of its counterpart federal statute," even though Michigan courts "are not compelled to follow those federal interpretations." *Chambers v Trettco, Inc*, 463 Mich 297, 313; 614 NW2d 910 (2000).

Moreover, even if there was no genuine issue of material fact regarding whether plaintiff had engaged in protected activity, ultimately, plaintiff was not penalized by the union, or her employer, as a result of Clayton's complaint. The union trial board concluded that plaintiff had not violated union bylaws and dismissed Clayton's charge. There was testimony that the union president requested that plaintiff voluntarily resign from her leadership role in the union, and that plaintiff did so; in fact, Kowalesky testified that there was really no reason for plaintiff to have resigned her position with the union. In light of the fact that plaintiff resigned her union position voluntarily and Clayton's complaint was dismissed, reasonable minds could differ regarding whether Clayton's complaint, even if it was an employment action, resulted in any adversity to plaintiff.

Contrary to plaintiff's position, Clayton and his counsel did not concede all elements of plaintiff's prima facie case of retaliation under the ELCRA. Indeed, it was apparent that several questions of fact existed upon which reasonable jurors could differ. Consequently, the trial court properly denied plaintiff's motion for a directed verdict.

### III. JURY INSTRUCTION

Plaintiff also argues that the trial court erred by giving defendants' proposed supplemental jury instruction regarding plaintiff's retaliation claim under the ELCRA. We disagree. We review de novo claims of instructional error. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). However, whether a supplemental instruction is applicable and accurate is within the trial court's discretion, *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 451; 750 NW2d 615 (2008), and it will be reviewed on appeal for an abuse of that discretion, *Chastain v Gen Motors*, 254 Mich App 576, 590; 657 NW2d 804 (2002).

Jury instructions should include all elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). Instructions must not be extracted piecemeal to establish error. *Id.* Even if somewhat imperfect, instructions do not create error requiring reversal if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury. *Murdock v Higgins*, 454 Mich 46, 60, 559 NW2d 639 (1997). This Court will only reverse for instructional error when the failure to do so would be inconsistent with substantial justice. MCR 2.613(A); *Johnson v Corbet*, 423 Mich 304, 377 NW2d 713 (1985).

Initially, the trial court instructed the jury, relative to plaintiff's retaliation claim, as follows:

The law provides that a person shall not retaliate or discriminate again a person because the person has opposed a violation of the Michigan Civil Rights Act, otherwise known as the Act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the Act.

The plaintiff has the burden of proving the following elements: (a) that she opposed a violation of the Civil Rights Act, made a charge, filed a complaint, or testified, assisted, or participated in an investigation, proceeding, or hearing under the Act; (b) that was known by the defendants, (c) that defendants took an

employment action adverse to the plaintiff; and (d) there was a causal connection between the protected activity and the adverse employment action. To establish a causal connection, plaintiff must demonstrate that her participation in the protected activity was a significant factor in the defendant's adverse employment action. [See M Civ JI 105.01 and M Civ JI 105.04A.]

After the court instructed the jury, the jury deliberated for approximately 30 minutes before being excused for the day. Shortly after deliberations resumed the following morning, the jury sent the trial court a note, which the court read into the record:

> On Elliott Larson [sic] Civil Rights Act retaliation, did plaintiff oppose a violation of the Civil Rights Act or file a charge under the act? If we find that the plaintiff filed a complaint but that the charge was false, is this considered filing a charge under the act? In other words is there a requirement for the plaintiff's claim to be made in good faith under Elliott Larson [sic] similar to the good faith belief requirement under the Whistleblower Protection Act?

As stated, each party drafted and submitted a proposed supplemental jury instruction. The trial court described plaintiff's requested instruction as follows:

> The plaintiff requests the response to be after the first part of the question they want to say that when it says did the plaintiff oppose a violation of the civil rights act or file a charge under the act, the plaintiff wants to respond either one is engaging in protected activity and she did oppose sexual touching.

> And then in the subpart of that it says if we find that the plaintiff filed a complaint but that charge was false, is this considered filing a charge under the act, and plaintiff wants me to say yes.

> Then with regard to -- and the other words is there a requirement for the plan – plaintiff's claim to be made in good faith under the Elliott Larson similar to the good faith belief requirement under the Whistleblowers Protection Act? The plaintiff wants the Court to respond, ELCRA retaliation occurs even if the plaintiff's claim was not made in good faith. The employer and the defendant could not retaliate against plaintiff once she posed a violation or made her report or charge. Plaintiff's report or complaint or charge does not have to be substantiated. They actually underline that. And they provide the source. That's how the plaintiff wants the Court to respond.

The trial court also read into the record defendants' proposed instruction, which provided:

> Unlike the Whistleblower Protection Act, the Elliott Larson Civil Rights Act does not have an explicit provision which requires good faith, however it states for there to be protected activity there must be opposition "to the act" or claim or complaint "under the act." It is plaintiff's position that her complaint was protected activity without regard to whether it was made in good faith. It is defendants' position that if her complaint was untrue it was not made "under the act." It is for you to determine whether the complaint was "under the act."

After considering the parties' positions, the trial court concluded that defendants' proposed supplemental instruction accurately stated the law and was consistent with the court's ruling on the directed verdict motion, i.e., that it was for the jury to decide whether plaintiff had made a claim under the ELCRA. The court gave that supplemental instruction and, after approximately 20 minutes of further deliberations, the jury indicated that it had reached a verdict.

Plaintiff argues that by its supplemental instruction, the trial court allowed or required the jury to decide a question of law regarding MCL 37.2701. We disagree. The trial court originally instructed the jury in accordance with M Civ JI 105.04A. This instruction directed the jury to determine whether plaintiff "opposed a violation of the Civil Rights Act, made a charge, filed a complaint, or testified, assisted, or participated in an investigation, proceeding, or hearing under the Act." The parties do not dispute that this model jury instruction accurately stated the law and plaintiff's burden of proof on her retaliation claim under the ELCRA. See MCL 37.2701; *El-Khalil*, 504 Mich at 161; *Barrett*, 245 Mich App at 318.

The subsequent supplemental instruction that the court gave the jury simply reiterated that it was up to the jury to decide whether the "complaint was made under the act." The supplemental instruction did not add an element to plaintiff's burden of proof.[4] The additional comments regarding the parties' positions simply lent context to the instruction. Because the instruction included both parties' positions, there is no basis for plaintiff's assertion that the jury was asked to make a finding of law based on the opinion of defense counsel; rather, the instruction merely reminded the jury of its duty to determine if plaintiff was engaged in protected activity when she made her complaint. Moreover, as discussed in Part II of this opinion, if the jury found that plaintiff had fabricated her sexual harassment claim, plaintiff would have lacked a good-faith belief that she was reporting an unlawful employment practice, see *Booker*, 879 F2d at 1313; if anything, the supplemental instruction was more favorable to plaintiff than it could have been. On balance, the supplemental instruction adequately and fairly presented the parties' theories and the applicable law. *Murdock*, 454 Mich at 60.

Affirmed.


/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel

---

[4] In a convoluted argument, plaintiff seems to suggest that the trial court's supplemental instruction required the jury to determine plaintiff's motive in pursuing her complaint. Because plaintiff has not fully articulated her position, it is unclear how plaintiff has reached this conclusion. In support of her argument, plaintiff simply states that *Whitman v City of Burton,* 493 Mich 303; 831 NW2d 223 (2013), is controlling and stands for the proposition that "motive doesn't matter, period!" We note that *Whitman* involved the interpretation of the WPA, not the CRA. Further, the Court in *Whitman* never addressed the issue of retaliation for a fabricated charge of sexual harassment in the workplace. The *Whitman* decision is inapposite and plaintiff's reliance on it is misplaced.