*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHAN JOHNSON,

Plaintiff-Appellant,

v

LIBERTY MUTUAL GENERAL INSURANCE
COMPANY,

Defendant,

and

MICHAEL AQUILINA,

Defendant-Appellee.

UNPUBLISHED
March 10, 2022

No. 352983
Wayne Circuit Court
LC No. 18-002217-NI

Before: BORRELLO, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant Michael Aquilina (defendant)[1] under MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of a motor vehicle accident in Westland, Michigan on October 4, 2016. Defendant was driving his vehicle in the far-right lane, traveling east. Plaintiff was in the left lane, also traveling east. Immediately before the collision, plaintiff was stopped at a red light. Defendant's vehicle veered into the left eastbound lane, sideswiped another vehicle, and then hit

---

[1] We use the singular term "defendant" to refer to Aquilina because plaintiff's claim against Liberty Mutual General Insurance Company was dismissed by stipulation and Liberty Mutual is not a party to this appeal.

-1-

the rear end of plaintiff's vehicle. The collision caused plaintiff's vehicle to collide with another vehicle that was stopped in front of plaintiff's vehicle. Defendant's vehicle continued into the oncoming traffic lanes and then off the road.

In his complaint, plaintiff alleged that the collision resulted from defendant's negligent driving and that the accident caused plaintiff to suffer injuries that included injuries to the cervical and lumbar spine, as well as aggravation of pre-existing conditions.

In his answer to plaintiff's complaint, defendant raised as affirmative defenses that plaintiff's claim was barred by the sudden-emergency doctrine, that plaintiff suffered from a pre-existing condition that was not caused or aggravated by the subject accident, and that plaintiff did not suffer a threshold injury for purposes of MCL 500.3135.

Defendant subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff could not establish that his injuries were caused by the October 2016 accident, that plaintiff could not demonstrate that he suffered an objectively manifested impairment of body function as a result of the accident, and that any negligence attributable to defendant was excused by the sudden-emergency doctrine because defendant suffered "a seizure" just before the accident. Defendant argued that plaintiff's medical records and Social Security disability records showed that plaintiff had a long history of chronic neck and back pain, as well as degenerative spinal issues. Consequently, defendant maintained that plaintiff's post-accident medical treatment was necessitated by pre-existing, chronic and degenerative conditions rather than any injury or aggravation of these injuries caused by the 2016 accident. Defendant further argued that plaintiff could not show that he suffered an objectively manifested impairment as a result of the accident because his medical records only evidenced treatment for subjective complaints of pain and that plaintiff could not demonstrate that his ability to lead his normal life was affected because there was evidence that he had been totally disabled for six years preceding the accident.

With respect to the sudden-emergency doctrine, defendant submitted an affidavit[2] in which he averred, "Upon information and belief, I experienced a seizure while driving seconds prior to the motor vehicle accident." He further stated in the affidavit that he had "never experienced a seizure or any type of similar event" before the day of the accident. Defendant argued that there was no genuine issue of material fact that he was presented with a sudden emergency at the time of the accident, thus excusing any alleged negligence in veering randomly to the left and striking plaintiff's vehicle.

Following a hearing, the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10) "for the reasons stated in Defendant's Brief." Plaintiff now appeals this ruling.

II. ANALYSIS

---

[2] Contrary to plaintiff's assertion on appeal, the lower court record contains a signed, notarized version of this affidavit.

-2-

## A.  STANDARD OF REVIEW

We begin our analysis by noting that the trial court issued its ruling: "for the reasons stated in Defendant's Brief."  Such a ruling is of little value to this Court because we cannot discern from such a broad statement whether the trial court agreed with every factual and legal argument contained in defendant's brief, some of the factual and legal arguments, and if so, which factual or legal arguments.  For purposes of our review, because the trial court failed to make any legal or factual findings of its own, we must proceed on the presumption that the trial court found convincing every factual and legal argument contained within defendant's brief.

An appellate court "reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).  In evaluating a motion for summary disposition brought under MCR 2.116(C)(10), a court must "consider[] affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion."  *Id*. at 120 (citation omitted).  "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.  A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## B.  SUDDEN-EMERGENCY DOCTRINE

On appeal, plaintiff first argues that the trial court erred by granting summary disposition on the ground that there was no genuine issue of fact that defendant's negligence was excused under the sudden-emergency doctrine.  Defendant maintains that pursuant to the "sudden-emergency doctrine," he could not be negligent as a matter of law because there is no genuine issue of material fact that he faced a sudden emergency not of his own making in the form of an unexpected seizure at the time of the accident.

To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).  However, this Court has previously observed that the "sudden-emergency doctrine is a judicially created principle," pursuant to which

> [o]ne who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.  [*Vsetula v Whitmyer*, 187 Mich App 675, 680-681; 468 NW2d 53 (1991) (quotation marks and citation omitted).]

"The sudden-emergency doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making." *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139-140; 753 NW2d 591, 593 (2008) (quotation marks and citation omitted).  Our

Supreme Court has explained that application of the sudden-emergency doctrine requires "an 'emergency' within the meaning of that rule," which "present[s] a situation that is 'unusual or unsuspected.' " *Vander Laan v Miedema*, 385 Mich 226, 231-232; 188 NW2d 564 (1971) (citations omitted). For example, a "sudden, unexpected blackout" experienced by the defendant while driving could potentially constitute such a sudden emergency if the blackout was "totally unexpected." *White*, 482 Mich at 140 (quotation marks and citation omitted).

Nonetheless, the sudden-emergency doctrine is not an affirmative defense. *Szymborski v Slatina*, 386 Mich 339, 341; 192 NW2d 213 (1971). "In actuality, the doctrine of 'sudden emergency' is nothing but a logical extension of the 'reasonably prudent person' rule. *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965). "[T]he test to be applied is what that hypothetical, reasonably prudent person would have done under all the circumstances of the accident, whatever they were." *Id*. "A sudden emergency is simply one of the circumstances to be considered in determining whether an act or conduct was negligent." *Woiknoris v Woirol*, 70 Mich App 237, 240-241; 245 NW2d 579 (1976). Our Supreme Court has further explained:

> The standard of care required of one suddenly confronted with an emergency is a question frequently presented for consideration . . . . The degree of care required in such situations, however, does not vary merely because of the existence of the unusual circumstances. The standard is neither higher nor lower, *the inquiry remaining the same as to whether the one sought to be charged with negligence acted as a reasonably prudent man would act under the same or similar circumstances*. [*Triestram v Way*, 286 Mich 13, 17; 281 NW 420 (1938) (emphasis added).]

The duty of "reasonable" or "ordinary" care, which are terms that may be used interchangeably, describes "the so-called 'general standard of care' applicable in negligence cases." *Case*, 463 Mich at 6-7, 6 n 7 (citation omitted). "Ordinary care means the care that a reasonably careful person would use under the circumstances." *Id*. at 7. "Negligence . . . consists in a want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury[.]" *Id*. (quotation marks and citation omitted; ellipsis in original). It is ordinarily the jury's responsibility to determine whether a defendant's conduct breached, or "fell below," the general standard of care. *Id*. Our Supreme Court has also explained this concept as follows: "the jury usually decides the *specific* standard of care that should have been exercised by a defendant in a given case." *Id*.

> There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men,

under a similar state of affairs. [*Id*. at 10, quoting *Grand Trunk R Co v Ives*, 144 US 408, 417; 12 S Ct 679; 36 L Ed 485 (1892) (some quotation marks omitted).]

Applying these principles to the instant case, it is still a question of fact to be resolved by the jury whether defendant breached the standard of care under all the circumstances, even accepting as true his contention that he faced a sudden emergency when he suffered a seizure in the moments before the accident, having never before suffered a seizure. Defendant argues, and apparently the trial court accepted as true that experiencing a seizure while driving excuses him from any alleged negligence related to the accident. In this way, defendant and the trial court treated the sudden-emergency doctrine as an affirmative defense. *Campbell v St John Hosp*, 434 Mich 608, 615-616; 455 NW2d 695 (1990) (explaining that an affirmative defense does not address the merits of the plaintiff's claim but instead "seeks to foreclose the plaintiff from continuing a civil action for reasons unrelated to the plaintiff's prima facie case").

However, the experience of a sudden emergency does not provide an affirmative defense to a negligence claim, *Szymborski*, 386 Mich at 341, but is instead merely one of the factors to consider in determining whether a person was negligent by failing to act as a reasonably prudent person would have under all of the circumstances, *Baker*, 374 Mich at 496; *Triestram*, 286 Mich at 17; *Woiknoris*, 70 Mich App at 240-241.

Additionally, defendant failed to support his sudden-emergency defense with competent evidence. Here, defendant provided an affidavit, which states in relevant part:

> 2. Upon information and belief, I experienced a seizure while driving seconds prior to the motor vehicle accident.
>
> 3. Prior to October 4, 2016, I had never experienced a seizure or any type of similar event.
>
> 4. This affidavit is based on my personal knowledge.

"Affidavits . . . shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6). An affidavit submitted in support of summary disposition is subject to the requirements of MCR 2.119(B)(1), which provides that an affidavit must:

> (a) be based on personal knowledge;
>
> (b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and
>
> (c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.

Additionally, MRE 602 requires that witnesses have personal knowledge of the matters on which they testify. The requirement of personal knowledge is not satisfied by an affidavit that is based solely "on information and belief." *Durant v Stahlin*, 375 Mich 628, 639; 135 NW2d 392 (1965). If scientific or technical knowledge will assist the trier of fact in determining a fact in issue, "a

witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion" that is "based on sufficient facts or data . . . ." MRE 702. A lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." MRE 701.

Defendant's statement in his affidavit that he suffered a seizure did not satisfy these requirements. His belief that he suffered a seizure was attributed to "information and belief." He did not claim to have personal knowledge that he suffered a seizure, or even explain what information led him to believe that he had a seizure. Moreover, his statement that he had never previously experienced a seizure or any type of similar event negated any inference that he was experienced in recognizing the signs of a seizure or knew that a seizure had occurred. Lay testimony about general medical conditions observed by a witness is ordinarily permitted. *McPeak v McPeak (On Remand)*, 233 Mich App 483, 493; 593 NW2d 180 (1999), lv den 461 Mich 926 (1999). However, a first-time seizure is not a general condition that can be rationally based on the perception or self-diagnosis of the person suffering the seizure, especially where the occurrence of an alleged seizure is based on information and belief, rather than personal knowledge; therefore, defendant's belief that he had one was not permissible lay opinion testimony under MRE 701. Defendant did not submit an affidavit by a medical expert, or any other evidence explaining the basis for his information or belief that he actually experienced a seizure. He provided the police report in which the author of the report attributed defendant's loss of control of his vehicle to a seizure, but there is no basis for concluding that the report author had any personal knowledge that defendant had a seizure, and any statement by defendant to the officer to that effect would have been inadmissible hearsay, MRE 801(c) (defining hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted"); MRE 802 (hearsay is not admissible except as otherwise provided by the rules of evidence). Accordingly, defendant did not satisfy his initial burden of providing evidentiary support for the factual basis for his assertion of a sudden emergency. *Lockwood*, 323 Mich App at 401. Thus, he was not entitled to summary disposition on the basis of the sudden-emergency doctrine.

## C. THRESHOLD INJURY

Plaintiff next argues that the trial court erred by granting summary disposition on the ground that there was no genuine issue of material fact that plaintiff did not suffer a threshold injury caused by the accident. Defendant argues that there was no factual dispute that plaintiff's conditions were pre-existing and not caused or aggravated by the accident. Defendant also argues that plaintiff did not demonstrate an injury satisfying the threshold requirement in MCL 500.3135(1).

As we have already stated, causation is one of the elements that a plaintiff must prove in asserting a negligence claim. *Case*, 463 Mich at 6. This requires the plaintiff to "prove that the driver's conduct was both a cause in fact and a legal cause of his injuries." *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). Additionally, Michigan's no-fault act, MCL 500.3101 *et seq.*, includes a requirement that a plaintiff establish that the accident caused a threshold injury when seeking noneconomic damages: "A person remains subject to tort liability for noneconomic loss *caused by* his or her ownership, maintenance, or use of a motor vehicle *only if* the injured person has suffered death, serious impairment of body function, or permanent serious

disfigurement." MCL 500.3135(1) (emphasis added); see also *McCormick v Carrier*, 487 Mich 180, 189-190; 795 NW2d 517 (2010).

At issue in this case with respect to the threshold injury requirement is whether plaintiff suffered a serious impairment of body function. MCL 500.3135(5) provides:

> (5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:
>
> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

As our Supreme Court stated in *McCormick*, there are three necessary prongs for establishing a "serious impairment of body function": "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living)." *McCormick*, 487 Mich at 215.

In the trial court, defendant first argued that plaintiff could not establish that the October 2016 accident caused his alleged injuries because there was no question of material fact that plaintiff's conditions were pre-existing and degenerative in nature. Defendant relied on evidence of defendant's longstanding history of back and neck issues, evidence that defendant received Social Security disability, and the report of a doctor who conducted an independent medical examination of plaintiff. Notably, although defendant characterized the insurance medical examiner's opinion as stating broadly that plaintiff only suffered from degenerative conditions, that characterization is not entirely accurate. The examiner actually opined that as of the time of the examination, which was approximately five months after the accident, plaintiff had "Resolved sprain of the neck and back," as well as degenerative arthritis in the lumbar spine.

Furthermore, plaintiff's post-accident medical records indicate that his treating doctor, Dr. Eric Kovan, concluded that plaintiff had neck pain, cervical radiculopathy, cervical myositis, whiplash, back pain, and lumbago with sciatica attributable to the motor vehicle accident and "all exacerbated from previous injuries." There is also record evidence that Kovan treated plaintiff for at least some of his pre-existing conditions before the accident. Additionally, there is record evidence of post-accident MRIs indicating that there were disc bulges and herniations compressing the thecal sac in plaintiff's cervical spine.

Our Supreme Court has held that "[r]egardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered *symptoms* from that condition." *Wilkinson*, 463 Mich at 395 (emphasis added). The record in this case contains conflicting evidence regarding the nature and extent of plaintiff's injuries and whether those injuries constituted aggravations of his pre-existing conditions caused by the accident. The existence of such conflicting evidence on these material issues makes summary disposition inappropriate. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) ("[I]t is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition. Moreover, a court may not make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper.") (quotation marks and citations omitted; alteration in original); MCL 500.3135(2)(a).[3]

Viewing the evidence in a light most favorable to plaintiff as the nonmoving party, as required by the applicable standard of review, *Maiden*, 461 Mich at 120, a jury could reasonably find from medical records submitted in this case that trauma from the accident caused exacerbated symptoms from plaintiff's pre-existing conditions, *Wilkinson*, 463 Mich at 395. The trial court thus erred to the extent it relied on defendant's argument that plaintiff had not established a question of fact regarding whether there was an aggravation of plaintiff's pre-existing conditions caused by the accident.

Additionally, contrary to defendant's argument, the medical records discussed above also provide evidence of impairment that was "observable or perceivable from actual symptoms or conditions" such that there is evidence from which a jury could reasonably conclude that the first *McCormick* prong regarding an objective manifestation was satisfied. *McCormick*, 487 Mich at 196; MCL 500.3135(5)(a).

---

[3] MCL 500.3135(2)(a) provides:

(2) For a cause of action for damages under subsection (1) or (3)(d), all of the following apply:

(a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

There is also record evidence in the form of plaintiff's deposition testimony that plaintiff was unable to drive for a period of approximately five months following the accident, which prevented him from being able to pick his grandson up from school as he had done previously. Plaintiff further testified, "I can't go out and throw a ball and play with my grandson anymore." Satisfying the third *McCormick* prong requires showing that the impairment had "an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202; see also MCL 500.3135(5)(c). "[T]here is no temporal requirement for how long an impairment must last." MCL 500.3135(5)(c). "[T]he statute merely requires that a person's general ability to lead his or her normal life has been affected, not destroyed." *McCormick*, 487 Mich at 202. Moreover, "the plain language of the statute only requires that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected. Thus, while the extent to which a person's general ability to live his or her normal life is affected by an impairment is undoubtedly related to what the person's normal manner of living is, there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 202-203. Applying these principles to the instant case and viewing the evidence in the light most favorable to plaintiff as the nonmoving party, a jury could reasonably conclude that the third *McCormick* prong was satisfied. *Id*.

Accordingly, to the extent that the trial court relied on defendant's argument below that plaintiff could not satisfy the threshold injury requirement of MCL 500.3135(1) because there was no evidence to create a question of fact on the first and third *McCormick* prongs, the trial court also erred. *West*, 469 Mich at 183.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff having prevailed in full may tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Kathleen Jansen