*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROSE STEVENS,

        Plaintiff-Appellee,

v

ESTATE OF BRITTNEY HUNTER,

        Defendant-Appellant,

and

KIMBERLY HUNTER and STATE FARM
MUTUAL AUTOMOBILE INSURANCE
COMPANY,

        Defendants.

UNPUBLISHED
November 19, 2025
8:46 AM

No. 368595
Bay Circuit Court
LC No. 22-003205-NI

---

ROSE STEVENS,

        Plaintiff-Appellee,

v

KIMBERLY HUNTER,

        Defendant-Appellant,

and

ESTATE OF BRITTNEY HUNTER, and STATE
FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,

        Defendants.

No. 368596
Bay Circuit Court
LC No. 22-003205-NI

-1-

HOME-OWNERS INSURANCE COMPANY,

       Plaintiff-Appellant,

v

ROSE STEVENS, and STATE FARM MUTUAL
INSURANCE COMPANY,

       Defendants-Appellees,

and

KIMBERLY HUNTER, and KIMBERLY
LUBINSKI, as personal representative of the
ESTATE OF BRITTNEY HUNTER,

       Defendants.

No. 368622
Bay Circuit Court
LC No. 22-003394-CK

Before: GADOLA, C.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

This matter consists of three consolidated cases. In Docket No. 368595, defendant, the estate of Brittney Hunter, appeals by leave granted[1] the trial court's order denying its motion for summary disposition. In Docket No. 368596, defendant, Kimberly Hunter, appeals by leave granted[2] the trial court's order denying her motion for summary disposition.[3] And in Docket No. 368622, plaintiff, Home-Owners Insurance Company, appeals by leave granted[4] the trial court's order denying its motion for summary disposition. In Docket Nos. 368595 and 368596, we reverse and remand for the entry of an order or orders granting Kimberly and the estate summary disposition under MCR 2.116(C)(10). In Docket No. 368622, we affirm in part, reverse in part,

---

[1] *Stevens v Estate of Hunter*, unpublished order of the Court of Appeals, entered April 17, 2024 (Docket No. 368595).

[2] *Stevens v Estate of Hunter*, unpublished order of the Court of Appeals, entered April 17, 2024 (Docket No. 368596).

[3] We will collectively refer to the appellants in Docket Nos. 368595 and 368596 as "defendants." Individually, we will refer to the estate of Brittney Hunter as "the estate" when discussing the defendant in Docket No. 368595; we will refer to the estate's decedent as "Brittney." Because they share surnames, we will refer to Kimberly Hunter individually as "Kimberly."

[4] *Home-Owners Ins Co v Hunter*, unpublished order of the Court of Appeals, entered June 12, 2024 (Docket No. 368622).

-2-

and remand for entry of an order granting Home-Owners partial summary disposition under MCR 2.116(C)(10).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

These three appeals arise from the same incident. On March 20, 2021, plaintiff Rose Stevens was struck by an automobile while she and her husband were walking across Broadway Avenue in Bay City. Stevens was injured. The vehicle that struck her did not stop. Neither Stevens nor her husband were able to identify or describe the vehicle that struck Stevens, and they did not see the driver or any occupants of the vehicle.

Bay City Police Department officers investigated the hit-and-run; the investigation was headed by Corporal Lynnette Pashak. Officers obtained surveillance video from the nearby home of Zachary Bukowski showing a dark-colored Chevrolet HHR driving in the area where Stevens was struck on the night of the hit-and-run; however, the video did not capture the actual collision and the driver or occupants of the HHR were not visible. Officers also found car parts at the scene of the collision; some of them were matched via internet search to parts for a Chevrolet HHR from model years 2006 through 2011. The debris from the scene included pieces of a front headlight and headlight assembly. A witness who was driving along Broadway Avenue observed a dark-colored vehicle with a missing driver's-side headlight driving very fast and making a squealing noise; the witness described the vehicle as either a Chevrolet PT Cruiser or an HHR. Based on this investigation, Corporal Pashak put out a "be on the lookout" (BOLO) notice to patrol officers for a dark-colored HHR.

The same day the BOLO was issued, officers located a black 2007 Chevrolet HHR with front-end driver's side damage and a missing driver's side headlight parked in a church parking lot. Corporal Pashak stated in her deposition that the damage to the HHR was "consistent with the vehicle parts collected from the scene." Areas of the driver's side that had been damaged had been spray-painted black. Corporal Pashak impounded the HHR. HHR parts found at the scene were matched to "voids" on the impounded HHR.

The HHR belonged to Kimberly and was insured by Home-Owners under a policy issued to Kimberly. Mark Bryan, Kimberly's adult son, told Corporal Pashak that "everyone drives that car." Corporal Pashak contacted Kimberly for an interview. Kimberly then retained counsel and police made no further attempts to interview her.

Corporal Pashak testified that an officer investigating the case had received a tip that Mitchell Huggard (also known as Mitchell Grzegorczyk) was driving Kimberly's HHR that day. When interviewed, Huggard denied driving the HHR that day and stated that Brittney had driven the HHR in the past. Corporal Pashak attempted to interview Brittney while she was in the county jail after having been arrested on unrelated charges; after being read her *Miranda*[5] rights, Brittney declined to speak with Corporal Pashak. Corporal Pashak requested arrest warrants for both Huggard and Brittney, but these were denied by the prosecutor's office.

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

DNA taken from the steering wheel of the HHR indicated that there were multiple DNA contributors, at least one of them male. Brittney was neither confirmed nor excluded as a contributor to the DNA found on the steering wheel. Officers who searched the HHR found a lottery ticket that had been scanned on a mobile application registered to Brittney. The ticket had been scanned on March 20, 2021 at approximately 1:22 a.m., around twenty hours before the collision.

At her deposition, Kimberly stated that Brittney "may have" occasionally driven the HHR in 2021. She stated that she never allowed Huggard to borrow the HHR. Kimberly testified that she would sometimes deny Brittney when she asked to borrow the HHR and that Brittney did not have standing permission to borrow it; Kimberly "may have allowed her [to borrow the HHR] for a certain thing or two, but not normally." She said that Brittney was only allowed to drive the HHR if Kimberly felt comfortable with her doing so. When asked if it was possible that Brittney was driving the HHR on March 20, 2021, Kimberly responded "not that I know of," and "I don't believe she was." Kimberly stated that she had the keys to the HHR in her purse that night when she went to bed on March 20th, and that the HHR was in the same spot in the church parking lot when she woke up the next morning. Brittney never said anything to Kimberly about an accident involving the HHR. Kimberly elaborated that Brittney did not have "free will" to use the HHR, and that Brittney "couldn't use it any time she wanted to." After initially stating that she did not believe she had given Brittney permission to use the car on March 20, 2021, Kimberly answered "no" in response to the question "[I]f Brittney did have the HHR on March 20, 2021, would you have given her permission to use the vehicle?"

Brittney died during the investigation into the hit-and-run. She was never deposed. Corporal Pashak testified at her deposition that she never determined who was driving the HHR.

In 2023, Stevens filed suit against defendants, alleging that Brittney had negligently operated a motor vehicle, causing her injuries, and that Kimberly was vicariously liable under the owner's liability statute, MCL 257.401. Defendants each moved for summary disposition under MCR 2.116(C)(10). Both defendants argued that Stevens could not establish who was driving the vehicle that struck her, or even that the HHR owned by Kimberly was the vehicle that struck Stevens. Kimberly also argued that Stevens could not establish liability under the owner's liability statute.

After Stevens filed suit, Home-Owners filed a declaratory judgment action, alleging that it was the insurer of Kimberly's HHR and seeking a declaration that it had no duty to provide coverage under the policy for two reasons: (1) that Kimberly had not given anyone permission to drive the HHR on March 20, 2021 and (2) that Kimberly had not complied with the provisions of the insurance policy pertaining to an insured's responsibility to cooperate with its investigation. Home-Owners subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that no genuine issue of material fact existed regarding either of its stated reasons to deny coverage.

The trial court held hearings on all three motions for summary disposition on the same day in October 2023. The trial court denied all three motions. These appeals followed.

-4-

## II.  STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant, *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). A genuine issue of material fact exists when the record, viewed in the light most favorable to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III.  DEFENDANTS' MOTIONS FOR SUMMARY DISPOSITION

## A.  IDENTITY OF THE VEHICLE

Defendants argue that the trial court erred by not granting their motions for summary disposition, because Stevens did not establish a genuine issue of material fact regarding whether Kimberly's vehicle was the one that struck Stevens. Although we ultimately agree that the trial court erred by not granting defendants' motions, on this specific issue we agree with the trial court that a genuine issue of material fact existed regarding whether Kimberly's HHR was the vehicle that struck Stevens.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a plaintiff's claim. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). To survive summary disposition, a plaintiff must establish at least a genuine issue of material fact regarding each of the elements of her claim. In this case, Stevens's claims against Brittney and Kimberly are based in negligence. In a negligence case, a plaintiff must establish "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). The issue of whether Kimberly's HHR struck Stevens is one of causation—Stevens must adequately establish that the vehicle was the factual cause of Stevens's injuries in order for legal causation to become a relevant issue. *Skinner*, 445 Mich at 163. A plaintiff may not base a theory of causation on mere speculation and conjecture; rather, the plaintiff's evidence must permit a jury to "reasonably infer the existence of a causal relationship between a defendant's actions and a plaintiff's injuries." *Id.* at 165-167. However, a plaintiff need not negate all other possible causes in order to survive summary disposition; "[a]ll that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility." *Id.* at 166 (citation omitted).

Viewed in the light most favorable to Stevens, *Allison*, 481 Mich at 425, Stevens has established a genuine issue of material fact concerning whether Kimberly's HHR was the vehicle that struck her. Corporal Pashak testified at her deposition that car parts were found in the immediate area. These parts were matched via internet search to parts for a Chevrolet HHR.

Further, Corporal Pashak testified that the parts matched the front-end damage found on Kimberly's HHR when it was discovered and impounded three days after the accident. Corporal Pashak also spoke to a witness who told her that he saw a dark-colored vehicle that was either a PT Cruiser or an HHR, and that was missing a front headlight, near the scene of the accident on the night it occurred. Kimberly testified at her deposition that her car had some front-end damage, but she was unable to recall the exact nature or cause of that damage. Corporal Pashak testified at her deposition that she believed, after her investigation, that the HHR owned by Kimberly was the vehicle that struck Stevens. Although defendants point out that some evidence in the record contradicts that conclusion, such as statements from witnesses who believed the vehicle involved may have been a different make and model, Stevens was not required to negate all other theories of causation or prove her own theory with absolute certainty. *Skinner*, 445 Mich at 165. And conflicts in evidence should not be resolved on summary disposition. *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 540; 965 NW2d 121 (2020). A reasonable juror could conclude from the record that Kimberly's HHR was the vehicle that struck Stevens. *Allison*, 481 Mich at 425. Accordingly, the trial court did not err by not granting defendants' motions for summary disposition on this basis. *Id.*

## B. IDENTITY OF THE DRIVER

Defendants argue that, even if there was a genuine issue of material fact regarding whether Kimberly's HHR struck Stevens, Stevens did not establish a genuine issue of material fact regarding whether Brittney was driving the HHR at the time. We agree.

Stevens specifically alleged in her amended complaint that Brittney was the driver of the HHR, and Stevens asserted that Kimberly was vicariously liable (under the owner's liability statute) for Brittney's actions. Stevens's claim against Kimberly is therefore premised and dependent on Brittney being identified as the driver of the HHR. Consequently, this issue is determinative both with respect to Stevens' claim against the estate and against Stevens's claim against Kimberly.

None of the witnesses, including Stevens and her husband, could identify or describe the driver of the vehicle that struck Stevens. Corporal Pashak testified that DNA from multiple contributors was found on the steering wheel, with at least one of the contributors being male; but there was no evidence presented that Brittney's DNA was even among the contributors to the sample. Kimberly testified that Brittney had used the car in the past, but that she had not given Brittney permission to use the HHR whenever she wanted; Kimberly also testified that she did not give Brittney permission to use the car that night. The only piece of evidence that even relates Brittney to the HHR, other than Kimberly's testimony that Brittney drove the HHR sometimes, is the lottery ticket found in the car. Corporal Pashak testified that the ticket was scanned by a mobile application linked to Brittney approximately 20 hours before the accident.

Stevens's evidence in support of her claim that Brittney was driving the car amounts to no more than speculation. It is certainly within the realm of possibility that Brittney was driving the car, but it is at least equally possible that another person was driving it. At best, the lottery ticket supports the inference that Brittney was *in* the car 20 hours before the accident—this evidence is not only too attenuated to support a reasonable inference that Brittney was still in the car 20 hours later, it provides absolutely no support for the inference that Brittney was *driving* the car at the

time of the accident. Corporal Pashak testified at her deposition that although the investigation had focused on Brittney and Huggard as potential drivers, she was unable to form a conclusion regarding who was driving the car.[6]

The evidence at summary disposition was insufficient to establish a genuine issue of material fact regarding whether Brittney was driving the HHR when it struck Stevens. *Skinner*, 445 Mich at 164-165 ("The mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two.") (citation omitted). Accordingly, the trial court erred by not granting defendants' motions for summary disposition on this basis. *Allison*, 481 Mich at 425.[7]

## IV. HOME-OWNERS'S MOTION FOR SUMMARY DISPOSITION

Home-Owners argues that the trial court erred by denying its motion for summary disposition, and that it was entitled, as a matter of law, to a declaratory judgment of no coverage under the policy. With regard to Home-Owners's duty to indemnify its insured (Kimberly), we agree. However, to the extent that Home-Owners argues that it also had no duty to defend Kimberly, we conclude that Home-Owners has not established its entitlement to summary disposition on that specific issue.

As we have held, the evidence at summary disposition was insufficient to establish a genuine issue of material fact regarding whether Brittney was driving the HHR when it struck Stevens. Because, for the reasons stated, this requires the granting of summary disposition to

---

[6] Stevens also asserts that a fact-finder could reach an adverse inference (i.e., infer that Brittney's answers would have subjected her to criminal liability) from Brittney's refusal to speak to Corporal Pashak after being read her *Miranda* rights while incarcerated on an unrelated charge. See *Philips v Deihm*, 213 Mich App 389, 400; 541 NW2d 566 (1995). However, Stevens cites no authority, and we have found none, for the proposition that the mere fact that Brittney invoked her Fifth Amendment rights when questioned by police regarding a potential crime establishes a genuine issue of material fact concerning whether she was driving the vehicle involved in a hit-and-run. The Fifth Amendment privilege permits an individual not to answer official questions in civil proceedings as well as criminal, if "the answers might incriminate him in future criminal proceedings"; however, a jury is permitted to draw an adverse inference against an individual in a civil proceeding when "they refuse to testify in response to probative evidence offered against them." See *Baxter v Palmigiano*, 425 US 308, 318; 98 S Ct 1551; 47 L Ed 2d 810 (1976). Because there was no probative evidence offered to show that Brittney was driving the HHR, we conclude that *Baxter* and related cases are inapplicable here.

[7] Because we hold that Stevens did not establish a genuine issue of material fact regarding whether Brittney was driving Kimberly's HHR at all, it follows that a genuine issue of material fact was not established regarding whether Brittney was driving it with Kimberly's permission. We therefore need not address the parties' arguments concerning the owner's liability statute, MCL 257.401, or its presumption of permission.

Kimberly, Kimberly cannot be held liable under the owner's liability statute and she is entitled to summary disposition.

This necessarily also means that Kimberly (the insured) cannot "become legally responsible" under the terms of the policy and, therefore, that there is no coverage under the policy for which Home-Owners could be required to pay damages.[8] Accordingly, Home-Owners is entitled to a declaration of no coverage under the policy. For this reason, the trial court erred by denying Home-Owner's motion for summary disposition with respect to coverage under the policy. *Allison*, 481 Mich at 425.

Home-Owners argued before the trial court, and argues on appeal, that it has no duty to either indemnify *or* defend Kimberly under the policy. As discussed, we agree that Home-Owners has no duty to indemnify in this case. However, an insurer's duty to defend is broader than its duty to indemnify. *Citizens Ins Co v Secura Ins*, 279 Mich App 69, 74; 755 NW2d 563 (2008). An insurer has the duty to defend its insured "if the allegations of the underlying suit arguably fall within the coverage of the policy." *Id.* (quotation marks and citations omitted). The duty to defend is not limited to meritorious suits, but extends to even groundless, false, or fraudulent suits, if there are any theories of recovery that fall within the policy. *Id.* at 75.

In this case, as in *Citizens*, 279 Mich App at 75, the underlying complaint against Kimberly alleged that she had given a family member permission to operate the vehicle that struck Stevens. This is "a theory of liability that the [Home-Owners] policy arguably covers." *Id.* at 75. Therefore, the fact that we find Kimberly not ultimately liable does not relieve Home-Owners of its duty to defend its insured. See *Guerdon Indus, Inc v Fidelity & Cas Co of New York*, 371 Mich 12, 18; 123 NW2d 143 (1963).

We must still consider, however, Home-Owners's argument that Kimberly failed to perform her duties under the policy in response to a loss or claim, insofar as that argument might impact Home-Owners's duty to defend. In denying Home-Owners's motion for summary disposition, the trial court noted that Kimberly had provided at least some cooperation with Home-Owners's investigation. We agree with the trial court that Home-Owners is not entitled to judgment as a matter of law concerning Kimberly's' alleged breach of the insurance policy.

An insurance policy may provide specific duties for an insured in order to receive coverage after a loss or a claim. See *Allen v Michigan Basic Prop Ins Co*, 249 Mich App 66, 73; 640 NW2d 903 (2001). An insured's "wilful noncompliance" with these duties can result in the dismissal of their case against an insurer who has denied coverage. *Id.* at 75; see also *Brogdon v Am Auto Ins Co*, 290 Mich 130, 135, 137; 287 NW2d 406 (1939). "Wilful noncompliance" in this context refers to an insured's failure to "cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a *deliberate* effort to withhold material

---

[8] Kimberly's insurance policy with Home-Owners provided: "We will pay damages [in specified circumstances] for bodily injury and property damage *for which you become legally responsible* because of or arising out of the ownership, maintenance or use of your automobile . . . as an automobile." (Emphasis added).

information or a *pattern of noncooperation* with the insurer." *Id.* at 73 (citation omitted) (emphasis in original).

In this case, Home-Owners's policy of insurance requires, in relevant part, that Kimberly notify Home-Owners promptly if any claim or suit is brought against her, and cooperate with Home-Owners in "the investigation, settlement, or defense of any claim or suit" including "submitting to a statement under oath" and providing documents on request. Home-Owners acknowledges that Kimberly contacted it when she received notice of the suit against her. However, it argued before the trial court that Kimberly did not cooperate with the investigation of the suit against her. Home-Owners points out that Kimberly never responded to several letters requesting information sent to her after a claim was made by Stevens under the policy. At her deposition, Kimberly denied ever refusing to cooperate with Home-Owners's investigation into whether her HHR was involved in the collision that injured Stevens. Kimberly did recall receiving correspondence from her insurance company, and attempting to cooperate with Home-Owners's requests:

*Q*. Your insurance company at the time on the HHR, do you remember getting any correspondence from that all?

*A*. Yes.

*Q*. Do you recall what that correspondence was about?

*A*. There was so much, tons of paperwork. I, I couldn't even tell you exactly what. They asked me some questions about Britt and Mitch.

*Q*. Did they ask you this by phone, in person, by letter?

*A*. Both. Not in person.

*Q*. Okay. Did you—so you actually spoke to someone on the phone?

*A*. I believe I did at one time.

*Q*. And this would have been someone you believe that was a representative of your insurance company?

*A*. Yes.

*Q*. Okay, did it reach a point though with anything that was going on that you became overwhelmed, like just it was too much to deal with?

*A*. I probably did.

Kimberly testified that she is a diabetic and that, during the period when the collision was being investigated, she was also trying to help Brittney with the drug addiction that ultimately resulted in her death. She testified that she believed that she had responded to correspondence from Home-Owners, but stated that she was unsure if she could provide a copy of that response:

-9-

"I don't know. There's so much paperwork that I really don't know what's there." Home-Owners attached to its motion for summary disposition an affidavit from a claims adjuster stating that Kimberly did not respond to three letters requesting information sent in May, June, and July of 2021, and that Kimberly subsequently contacted Home-Owners to report that she was being sued. Home-Owners also points out that a default was entered against Kimberly in the declaratory action.

While there is evidence that Kimberly did not answer correspondence from Home-Owners, there is also evidence that she spoke with representatives of Home-Owners on the phone, and contacted Home-Owners when she received notice of a lawsuit. She also testified in a deposition. Although a default was entered against her in the declaratory action, it seems clear from the record that Kimberly subsequently participated in the litigation, notwithstanding that the default does not appear to have been formally set aside. On this record, we hold that there was at least a genuine issue of material fact regarding whether Kimberly engaged in the sort of "wilful noncompliance" that can permit an insurer to disclaim coverage. See *Allen*, 249 Mich App at 73. Accordingly, we affirm the trial court's denial of this aspect of Home-Owners's motion for summary disposition.

Because our reversal of the trial court regarding Home-Owners's duty to provide coverage under the policy does not relieve Home-Owners of its duty to defend its insured, and because Home-Owners has not otherwise established that it has no duty to defend Kimberly, we reverse the trial court denial of summary disposition on the issue of coverage, but affirm the trial court's denial of summary disposition regarding Home-Owners's duty to defend.[9]

## V. CONCLUSION

In Docket Nos. 368595 and 368596, we hold that the trial court erred by denying the defendants' motions for summary disposition, and we accordingly reverse and remand for the entry of an order or orders granting Kimberly and the estate summary disposition under MCR 2.116(C)(10). In Docket No. 368622, we reverse the portion of the trial court's order denying Home-Owners's motion for summary disposition regarding its duty to indemnify its insured, but affirm the trial court's denial of summary disposition regarding Home-Owners's duty to defend its insured; we accordingly affirm in part, reverse in part, and remand for entry of an order granting Home-Owners partial summary disposition under MCR 2.116(C)(10), consistent with this opinion.

Affirmed in part, reversed in part, and remanded for the entry of orders granting summary disposition and partial summary disposition as stated. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[9] We note that we do not hold that Home-Owners's duty to defend has been established as a matter of law; we only hold that the *lack* of such a duty has *not* been established as a matter of law. See MCR 2.116(I)(1), (2).

-10-